USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Regina B. Jamison,                                               :
                                                                 :
                      Plaintiff,                                   :                            **OPINION**
                                                                 :
                  -against-                                      :                       1:20-CV-8102 (KHP)
                                                                 :
Acting Commissioner of Social Security,                          :
                                                                 :
                      Defendant.                                   :
-----------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Regina B. Jamison ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the Commissioner's decision that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act from February 8, 2017, the onset date of her alleged disability, through the date of the decision, June 10, 2019.

      The parties submitted a Joint Stipulation ("J.S."), in lieu of motions for judgment on the pleadings. (ECF No. 25.) For the reasons set forth below, the Court GRANTS Plaintiff's motion and DENIES the Commissioner's motion.

## BACKGROUND

      Plaintiff, who was born on January 12, 1970, is 52 years old and separated from her husband in 2008. (A.R. 18, 198.) Plaintiff has a high school education, completed one year of college, and is able to communicate in English. (*Id.*) Plaintiff's relevant past work includes experience as a cashier, customer service representative, certified nursing assistant, and staffing coordinator. (A.R. 349.)

Plaintiff alleges disability due to two bulging discs in her back, a cyst on her back, high blood pressure, a ripped right rotator cuff, numbness in her right hand, pain in her left knee, and ankle. (ECF No. 25.) Overall, Plaintiff testified that she suffers from a lack of mobility stemming from her back and ankle problems. The problems began in 2016, when Plaintiff injured her right shoulder when she was hit from behind in a car accident. (A.R. 204.) Plaintiff went to physical therapy, but when an MRI determined that Plaintiff's ligaments were worn and her rotator cuff was ripped, she had surgery in February of 2017. (A.R. 204.) Plaintiff went back to work in approximately June or July of 2017, but she reinjured herself attempting to reorient a patient while working as a nursing assistant. (A.R. 202.) Plaintiff testified that she had to take a little time off work to nurse her injured back. (*Id*.) Then, on March 27, 2018, Plaintiff tripped and fell and broke her ankle. (A.R. 197, 202.) In August 2018, Plaintiff had surgery to repair her ankle. Plaintiff undergoes physical therapy to re-strengthen her ankle and wears a foot brace for support. (A.R. 212) In most reports, Plaintiff complained of persistent neck pain and severe lower back pain. (A.R. 819, 909, 920, 984) Additionally, Plaintiff was also advised to start therapy and ice her left knee that would often swell and cause her persistent pain, which resulted in Plaintiff using a cane. *Id*.

1. ***Procedural History***

On March 22, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income. On May 8, 2017, both of Plaintiff's claims were initially denied. At Plaintiff's request, on January 9, 2019, a hearing before Administrative Law Judge ("ALJ") Sharda Singh was held. Plaintiff chose to appear and testify without the assistance of an

attorney or other representative. Vocational Expert ("VE") Jo G. Ancell also testified at the hearing about Plaintiff's ability to do her prior work and other jobs in the national economy that Plaintiff could perform. On June 10, 2019, ALJ Singh denied Plaintiff's application for benefits. Plaintiff requested review of the ALJ's decision by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on July 31, 2020 (A.R. 1-7), making the ALJ's decision the final Agency decision. This action followed.

Plaintiff commenced this action on September 30, 2020. (ECF No. 1.) The parties submitted a Joint Stipulation ("J.S.") in lieu of cross-motions for judgment on the pleadings (ECF No. 25.), pursuant to this Court's Order at ECF No. 12. Plaintiff argues that the ALJ failed to properly consider the opinion evidence when assessing Plaintiff's RFC. (ECF No. 25.)

## 2. *The Commissioner's Decision*

Plaintiff met the insured status requirements of the Act through December 31, 2021. (A.R. 13.) At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 8, 2017, the alleged onset date. 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq*. At step two, ALJ Singh found that Plaintiff has the following severe impairments: left ankle fracture, cervical radiculopathy, herniated disc of the lumbar spine, degenerative joint disease of the right shoulder and tendinosis, status post arthroscopy, and noted that these "impairments significantly limit the claimant's ability to perform basic work activities, as required by SSR 85-28." (A.R. 14.) However, at step three of the sequential analysis, ALJ Singh determined the Plaintiff's impairments did not meet or medically equal the criteria of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925 and 416.926). (A.R. 14.) The ALJ noted that she gave specific consideration to listings 1.02 Major dysfunction of a joint(s) (due to any cause) and 1.04 Disorders of the spine, but still found that Plaintiff's impairment did not meet the severity of the listed impairments. (A.R. 14.)

After careful consideration of the entire record, including Plaintiff's symptoms, medical evidence, and opinion evidence, ALJ Singh concluded that Plaintiff retained the RFC to:

> Perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except she requires a sit/stand option every thirty minutes for 1-2 minutes. She cannot climb ladders. She can occasionally climb stairs, balance, stoop and kneel. She must avoid hazards. She can frequently use her right hand.

(A.R. 14.) ALJ Singh found that Plaintiff's description of the limitations caused by her impairments could reasonably be expected to cause the alleged symptoms, however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. (A.R. 15.) At step four, the ALJ determined that Plaintiff could not perform the requirements of her past relevant work. At step five, ALJ Singh found that considering Plaintiff's age, education, work experience, and RFC, there are jobs "in significant numbers in the national economy that the [Plaintiff] can perform" such as information clerk, correspondence clerk, and office clerk. (A.R. 18.) Thus, ALJ Singh found that Plaintiff had not been disabled since February 8, 2017, through the date of the decision. (A.R. 19.)

**DISCUSSION**

1. *Applicable Law*

    **A. Judicial Standard of Review of the Commissioner's Decision**

A court's review of the Commissioner's denial of disability benefits is limited to two inquiries. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 546 (S.D.N.Y. 2011). The court must determine whether the Commissioner applied the correct legal principles in reaching a decision and whether the Commissioner's decision is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). If the Commissioner's decision is supported by substantial evidence in the administrative record, the ALJ's findings as to any facts are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure may have affected the disposition of the case. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statute, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *id.* (discussing failure to follow a regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (discussing failure to follow SSR). In such a case, the court may remand the matter under sentence four of 42 U.S.C. § 405(g), especially if necessary to allow the ALJ to develop a full and fair record or to explain his reasoning. *See, e.g.*, *Donnelly v. Colvin,* 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015).

**B. Legal Principles Applicable to Development of the Record and the Treating Physician Rule[1]**

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants, especially those proceeding *pro se*. *See Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). This duty exists because social security proceedings are "essentially non-adversarial." *Shafer v. Colvin*, 2018 WL 4233812, at *7 (S.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 4232914 (S.D.N.Y. Sept. 4, 2018)). Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with a 'full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010).

Additionally, regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue,* 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013). A treating physician's opinion is given controlling weight, provided the opinion as to the nature and severity of an impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Importantly, "to the extent that [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a

---

[1] As Plaintiff filed her application for disability before the new regulations took effect on March 27, 2017, the Court applies the older Treating Physician Rule to Plaintiff's claim. 20 C.F.R. § 404.1527(d)(2).

treating physician's diagnosis." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (quoting *Burgess v. Astrue,* 537 F.3d 117, 129 (2d Cir. 2008). As a result, "the treating physician rule" is inextricably linked to a broader duty to develop the record. *See Fields v. Saul*, 2020 WL 3041489, at *13 (S.D.N.Y. June 8, 2020). Proper application of the rules ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination." *Lacava v. Astrue*, 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012) ("In this Circuit, the [treating physician] rule is robust."), *report and recommendation adopted,* 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012). The duty to develop the record in this case is particularly importantly because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (citing 20 C.F.R. § 416.927(c)(2)).

To determine how much weight a treating physician's opinion should carry, the ALJ must consider the so-called "*Burgess* factors" outlined by the Second Circuit:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Burgess*, 537 F.3d at 129; 20 C.F.R. § 404.1527(c)(2). Thus, the ALJ's duty to develop the record is "inextricably linked" to the treating physician rule, which requires controlling weight

7

be given to the opinion of a claimant's treating physician when it is supported by accepted diagnostic techniques and not inconsistent with other evidence in the record. *Lacava*, 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012), *report and recommendation adopted*, 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012); *see also* 20 C.F.R. § 404.1527(c)(2)."

When the record does not contain a treating physicians' opinion(s) on the plaintiff's functional capacity (i.e., an RFC), the duty "requires that he *sua sponte* request" that opinion. *Marshall v. Colvin*, 2013 WL 5878112, at *9 (W.D.N.Y. Oct. 30, 2013).  While "it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician, a decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity."  *Newton v. Berryhill*, 2019 WL 4686594, at *2 (D. Conn. Sept. 26, 2019) (quoting *Downes v. Colvin*, 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015)).

Thus, if any obvious gap in the record exists, and that gap could be addressed by seeking a functional assessment from a treating physician, a court should remand the matter back to the ALJ.  *See Hooper v. Colvin*, 199 F. Supp. 3d 796, 807 (S.D.N.Y. 2016).

### C. Analysis

Here, Plaintiff alleges that the ALJ failed to properly consider the opinion evidence when assessing Plaintiff's RFC.  The Court agrees with Plaintiff.  From its review, the ALJ failed to receive a functional assessment from Plaintiff's treating physician and only relied on the Consultative Examiner's ("CE's") medical opinion.  The ALJ also failed to address and apply the

8

*Burgess* factors in discounting Plaintiff's treating physician, orthopedist, Dr. Michael Cushner. *Burgess*, 537 F.3d at 129; 20 C.F.R. § 404.1527(c)(2).

Courts in this Circuit have routinely held that remand is required when ALJs fail to satisfy their duty to develop the record where the only functional assessment is from a CE – in this case Trevor Litchmore, ("Litchmore") M.D. – after a single examination and failed to request (and receive) a functional assessment from the treating physician. *See, e.g.*, *Newton*, 2019 WL 4686594, at *2 (remanding for failure to develop the record when there were no functional assessments from any treating physician and the ALJ relied solely on a CE's single examination of plaintiff); *Marshall*, 2013 WL 5878112, at *9 (remanding for failure to develop the record when there were no functional assessments from plaintiff's treating physicians and the ALJ credited a physician and a CE, both of whom only examined plaintiff once); *Beller*, 2013 WL 2452168, at *18 (remanding for failure to develop the record when there were no functional assessments from plaintiff's treating physicians and the ALJ credited single-examination medical examiner and single-examination CE).

This case involves the same failure to develop the record. The CE, Dr. Litchmore, performed a consultative examination of Plaintiff in April of 2017. (A.R. 456.) This was the only time he examined Plaintiff. Dr. Litchmore observed that Plaintiff "had marked limitations relating to activities requiring moderate to severe exertion . . . and concluded that the claimant had marked limitations for overreaching with the right shoulder and lifting and carrying heavy objects with the right shoulder." (A.R. 459.) These limitations seem to have come from Dr. Litchmore's observations of Plaintiff's "limited right shoulder range of motion with thirty

9

degrees abduction and thirty degrees adduction and . . . [Plaintiff] did not perform right shoulder internal and external rotations due to pain and discomfort." (A.R. 458.) But, Dr. Litchmore did not explain how the decreased range of motion resulted in an assessment of marked limitations or what "marked" means in terms of what Plaintiff can still do despite these limitations. (A.R. 457.) Furthermore, the CE examination came just after Plaintiff had surgery in February of 2017 on her right shoulder, and the CE neither discusses the surgery, treatment therefrom, or prognosis from that point. Nonetheless, the ALJ based her decision to deny benefits on Dr. Litchmore's one-time examination and vague statements as to Plaintiff's functional capacity (just after surgery) without seeking information from Plaintiff's treating physician about her functional capacity. Courts within the Second Circuit have found remand appropriate when an ALJ bases an RFC evaluation on general conclusions of a CE using vague terms such as "marked," without any indication of Plaintiff's abilities and symptoms over time. *See, e.g.*, *McGill v. Colvin*, 2014 WL 2779232, at *10 (N.D.N.Y. June 19, 2014) (holding a single-examination CE's report containing "restrictive analysis and opinion that plaintiff has 'marked' limitations in her ability to perform work related functions" to be insufficient); *Karabinas v. Colvin*, 2014 WL 1600455, at *11 (W.D.N.Y. April 21, 2014) ("While the opinions of treating or consulting physicians need not be reduced to any particular formula, the consultative examiner's use of the term 'moderate', without additional information, does not permit the ALJ . . . to make the necessary inference that [Plaintiff] can perform the exertional requirements . . . of light work.").

To the extent the ALJ is lacking an assessment from the treating physicians about the Plaintiff's functional limitations, the ALJ has a duty to reach out and further develop the record. *See, e.g.*, *Newton*, 2019 WL 4686594, at *2 (D. Conn. Sept. 26, 2019) (remanding due to ALJ's failure to develop the record); *Shafer*, 2018 WL 4233812, at *7-8 (same); *Marshall*, 2013 WL 5878112, at *9 (same); *Beller*, 2013 WL 2452168, at *18 (same).  While a failure to seek a functional assessment from a treating physician does not always require a remand, "the RFC determination [must] otherwise [be] supported by the treating doctors' or a consultative examiner's clinical findings, and the ALJ [must have] a complete record from the treating doctors." *Jordan v. Comm'r of Soc. Sec.,* 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018). However, in the instant case, only a single functional assessment exists in the medical record, that functional assessment is from a one-time examination by a CE, and the CE's report is inconsistent with the treating doctors' clinical findings.  For example, Dr. Litchmore noted limitations in Plaintiff's arm and back movements, yet noted that she was in no acute distress, had a normal gait, "used no assistive devices," and examination of Plaintiff's lumbar spine was normal, showing full flexion, extension, lateral flexion, and full rotary movement bilaterally. (A.R. 457-58.)  This is in direct contradiction with, not only Plaintiff's testimony that she still uses a cane and has numbness on the right side of her body (A.R. 207, 210), but also with medical reports from her treating physician Dr. Cushner, both before and after the April 2017 consultative examination.  Plaintiff's longitudinal treatments with Dr. Cushner from February 2017 through 2019 illustrate Plaintiff did not have normal examinations of her spine, was in acute distress, had an antalgic gain, and often cited her pain level – even to Dr. Litchmore as a

"ten out of ten." (*See, e.g.*, A.R. 474, 476, 486, 543, 546-47, 985-86.)  Dr. Litchmore's report does not provide enough information to fill the gaps created by the contradictions between the CE report and Dr. Cushner.

As provided above, the treating physician rule is intertwined or dovetails with the ALJ's affirmative duty to develop the record.  *Burgess*, 537 F.3d 117, 129(2d Cir. 2008)*.*   In the Second Circuit, "the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."  *Burgess,* 537 F.3d at 129.  If the *Burgess* factors are not explicitly applied and discussed by the ALJ, remand will be appropriate unless the ALJ has elsewhere in the opinion provided "good reason" for the weight given to the treating physician, or a "searching review of the record" by a reviewing court satisfies the court that the "substance of the treating physician rule was not traversed."  *Estrella*, 925 F.3d at 96.  If an ALJ fails to develop the record, the ALJ will not be able to properly apply the treating physician's rule.  *See Shafer*, 2018 WL 4233812, at *10 (quoting *Barrie on behalf of F.T. v. Berryhill*, 2017 WL 2560013, at *10 (S.D.N.Y. June 12, 2017)).  Here, the ALJ did not apply nor discuss the *Burgess* factors when assigning "little" weight to Plaintiff's treating physician opinion.  (A.R. 17.)  The ALJ's curt rejection only found that, "[the opinion] does not provide function-by-function assessments of the claimant's capacity to perform specific work-related activities and the ultimate issue of the claimant's ability to work is reserved to the Commissioner."  (A.R. 17.)

This analysis falls well short of satisfying the treating physician rule, particularly in light of the tension between the treating physician's opinion and his examination findings and the

medical findings of the CE. The ALJ did not discuss how the medical findings and test results of the treating doctors over time are undermined by the findings of the one-time CE or contrary to the treating doctors' own statements about Plaintiff's inability to function in her old job. She also did not discuss how the medical findings of Plaintiff's treating doctor are consistent or inconsistent with Plaintiff's self-reported physical limitations and daily functioning. Further, the record contains significant examination findings made by Dr. David Dynof, who treated Plaintiff from at least June 2016 through middle of 2017 for injuries related to her neck, back and shoulder, but none of them were explained, mentioned or even considered by the ALJ in her decision. The ALJ should have addressed this provider in the ruling.

## **CONCLUSION**

For the above reasons, the Court finds that the ALJ failed to properly develop the record and failed to satisfy the treating physicians' rule by failing to discuss the *Burgess* factors. As a result, pursuant to sentence four of 42 U.S.C. § 405(g), remand to the Commissioner of Social Security for further administrative proceedings is appropriate, and the Court does not reach the remaining arguments of the parties. As such, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

Dated: April 25, 2022
     New York, New York

*Katharine H. Parker*
KATHARINE H. PARKER
United States Magistrate Judge